UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA SCHOENFELD, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>ROKFI LLC, JAMES WEBSTER, PATRICK MANNING; and all other related entities and individuals,<br><br>Defendants. | **Case No.: 26-cv-6975**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

The Named Plaintiff PATRICIA SCHOENFELD (the "Named Plaintiff"), by her attorneys, Leeds Brown Law, P.C., alleges upon knowledge to herself and upon information and belief as to all other matters as follows:

## NATURE OF THE ACTION

1. This is a proposed class action under 29 U.S.C. §§ 206, 207, and 216 of the Fair Labor Standard Act (FLSA), as well as Article 6 and 19 of the New York Labor Law (NYLL) brought on behalf of employees – or individuals who performed work for the benefit – of Defendants ROKFI LLC; JAMES WEBSTER, PATRICK MANNING; and all other related entities and individuals (collectively "Defendants") that performed work without proper wage and commission compensation, including minimum wage and overtime.

2. Defendant ROKFI LLC, ("ROK") is an alternative financing company that services nontraditional funding solutions to small business owners, including working capital, lines of credit, equipment financing, SBA loans, factoring, term loans, business credit, and personal credit.,

3. ROK employs and exercises control over hundreds of brokers, sales representatives, and loan officers in order to connect with prospective clients and business owners seeking financial services.

4. Although ROK represented to employee applicants that they would exercise autonomy over their work, Defendants exercised substantial and exhaustive control over Plaintiffs' day-to-day activities, including supervising work performance, directing sales practices, and monitoring productivity through their digital 8x8 business platform.

5. Despite this level of control, Defendants misclassified Plaintiffs while treating them as full-time employees and compensating them primarily or solely through commissions.

6. Beginning on March 15, 2020,* and continuing through the present, upon information and belief, Defendants unlawfully withheld wages from Plaintiffs who worked for Defendants selling, marketing, or training to sell financial services and products.

7. During this period, Defendants improperly treated Plaintiffs as exempt from minimum wage and overtime requirements by misclassifying them as independent contractors and compensating them primarily or solely on a commission basis.

8. Plaintiff Schoenfeld regularly worked in excess of forty hours per week without receiving lawful overtime compensation.

9. Plaintiffs were not properly compensated for many of the hours they worked, in violation of the FLSA, the NYLL, and the implementing regulations of the Miscellaneous Wage

---

* Generally, the applicable statute of limitations for NYLL claims is six years – which means that ordinarily a complaint "looks back" exactly six (6) years from the date of filing. However, the statute of limitations period was tolled for a total of 228 days as a result of Gov. Cuomo's Executive Order Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, and 202.72. See Brash v. Richard, 195 A.D.3d 582 (2d Dep't June 2, 2021) (concluding that the Executive Orders constitute a tolling – as opposed to a suspension – of filing deadlines).

Order, including by Defendants' practice of compensating workers solely through commissions without ensuring compliance with minimum wage and overtime requirements.

10. Defendants also made unlawful deductions from Plaintiffs' compensation by requiring them to pay $50 monthly for business expenses, including the costs of phones and other work-related expenses that should have been borne by Defendants.

11. Pursuant to Articles 6 and 19 of the NYLL, Plaintiff Schoenfeld, on behalf of herself and similarly situated employees who performed work for Defendants, seeks unpaid wages, minimum wages for all hours worked, overtime compensation for all hours worked in excess of forty in a workweek, unpaid commissions, interest, attorneys' fees, costs, and all other available relief.

12. Plaintiffs also seek statutory damages and additional amounts owed under NYLL §§ 195 and 198, including for Defendants' failure to provide wage theft notices at the time of hire and accurate wage statements during the course of employment.

13. Defendants engaged in a policy and practice of: (1) failing to pay minimum wages; (2) failing to pay overtime compensation; (3) failing to timely and fully pay earned commissions; (4) making illegal deductions from wages (4) failing to provide wage theft notices and accurate wage statements in violation of the FLSA, the NYLL, and the implementing regulations promulgated thereunder.

14. Accordingly, Plaintiff Schoenfeld brings this action on behalf of herself and all similarly situated employees seeking unpaid minimum wages, overtime compensation, unpaid commissions, statutory damages, liquidated damages, interest, attorneys' fees, costs, and all other relief available under the FLSA and NYLL.

## JURISDICTION & VENUE

15. This Court has personal jurisdiction over Defendants pursuant to FLSA, 29 U.S.C. §216(b), and 28 U.S.C. §1331 and 1337. This court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under the New York Labor Law.

16. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) because Defendants' principal place of business in this District.

## THE PARTIES

17. Plaintiff Patricia Schoenfeld is an adult individual residing in the State of New York. Plaintiff was employed by Defendants from approximately June 2026 to September 2026 as a Sales Representative.

18. Upon information and belief, Defendant ROKFI LLC is a domestic limited liability company and maintains their headquarters at 3500 Sunrise Hwy, Building 100, Suite 201, Great River, New York 11739.

19. Defendant James Webster is the Executive Chair and Founder of ROKFI LLC.

20. Defendant Manning is the Chief Executive Officer of ROKFI LLC.

21. Defendant Webster holds himself out as being in charge of the business entity under the ROK brand, including maintaining a physical presence in the work environment, possessing the authority to hire and fire employees, maintaining employment records, directing the work performed by the employees, dictating policies that apply to the employees, setting the rates of pay of the employees, and generally overseeing the operations of the business entities on a daily basis.

22. Defendant Manning holds himself out as being in charge of the business entity under the ROK brand, including maintaining a physical presence in the work environment, possessing the authority to hire and fire employees, maintaining employment records, directing the work

performed by the employees, dictating policies that apply to the employees, setting the rates of pay of the employees, and generally overseeing the operations of the business entities on a daily basis.

23. Collectively, Defendants, under the supervision and control of Defendant Webster, operate as a joint entity under the umbrella ROK.

24. Defendants maintained control, oversight and direction over the work performed by Plaintiff. The work performed by Plaintiff and others similarly situated simultaneously benefited Defendants.

## **FACTUAL ALLEGATIONS**

25. Upon information and belief, since approximately 2020, Defendants have operated an online small-business financing marketplace and have employed numerous individuals to perform tasks related to selling and marketing Defendants' lending and financial services and products, including merchant cash advances, lines of credit, equipment financing, amongst other services.

26. In the performance of those services, Defendants employ a staff of cold callers under the guise that those workers will receive significant sums of monies in the form of commission payments.

27. During their employment, Plaintiff, and upon information and belief similarly situated workers, were misclassified independent contractors despite working under Defendants' direction and control. They were required to meet demanding productivity quotas and regularly worked more than forty hours per week pursuing leads for Defendants' benefit. As a result of Defendants' misclassification of Plaintiff and similarly situated workers as independent contractors, Defendants failed to pay minimum wages and overtime compensation as required by

federal and New York law, thereby depriving Plaintiff and similarly situated workers of wages to which they were legally entitled.

***Plaintiff Schoenfeld's Experience***

28. From approximately June 2026 to September 2026, Plaintiff Schoenfeld worked for Defendants as a Sales Representative.

29. During her employment, Plaintiff Schoenfeld was improperly and unlawfully classified by Defendants as an independent contractor despite being treated as an employee and subject to Defendants' direction and control. Plaintiff Schoenfeld was to be compensated solely through commissions, which she never received.

30. During her employment, Plaintiff Schoenfeld was not paid minimum wages for all hours worked and did not receive overtime compensation at the legally required rate for hours worked in excess of forty per week.

31. As a result, Plaintiff Schoenfeld worked a period of approximately 5 months without receiving any compensation, while nevertheless remaining obligated to meet productivity quotas and other requirements imposed by Defendants.

32. Defendants exercised substantial control over Plaintiff Schoenfeld's work, including requiring her to be logged in to their online sales platform for a minimum of 5 hours each weekday, monitoring keystrokes within the platform, monitoring productivity setting performance expectations and sales quotas, directing sales activities, requiring attendance at daily meetings, supervising her day-to-day work, and controlling the manner and means by which she performed her duties. For example, Plaintiff recalls purchasing a lead from Defendants, which was sent to her after she had finished working for that day. Defendants then gave that same lead to another employee, without refunding Plaintiff's purchase, and claimed Plaintiff had not followed

up on it quickly enough. Defendants treated Plaintiff as an employee by strictly dictating the time and manner in which she used the lead to perform work for them.

33. Despite classifying Plaintiff Schoenfeld as an independent contractor, Defendants required Plaintiff Schoenfeld perform her work under the supervision and direction of Defendants' managers – and abide by Defendants' policies and requirements in the performance of her job duties. Defendants additionally subjected Plaintiff and, upon information and belief, other similarly situated employees to a mandatory "mentorship program" which involved direct oversight of her work by Defendants and involved a deduction of 10% from earned commission payments.

34. In further pursuit of Defendants' deceptive business model, Plaintiffs and similarly situated workers were heavily encouraged or required to participate in an internal recruitment scheme, internally branded as the "Accelerated Growth (override) Program."

35. Under this multi-level marketing structure, Defendants utilized Plaintiffs to perform free recruiting labor for the company. Plaintiffs were directed to recruit new contractors to ROK's sales platform in exchange for the promise of a 2.5% override commission on the upfront revenue generated by their downline recruits.

36. Defendants utilized this "downline" structure to further muddy the waters of Plaintiffs' employment status, dressing up standard employee recruitment and management duties as an independent business opportunity, while maintaining absolute authority to withhold or claw back these override commissions if a client defaulted.

37. Plaintiff Schoenfeld typically worked approximately 50 hours per week.

38. Despite regularly working more than forty hours per week, Plaintiff Schoenfeld was to be compensated solely through commissions and did not receive any hourly wages or overtime premium compensation for hours worked in excess of forty in a work week.

39. Defendants made illegal deductions from Plaintiff's wages by charging her for services and materials necessary for her to carry out her work. These deductions came in the form of a $50 monthly fee for access to ROK's 8x8 Business Call Platform, and the selling of leads to Plaintiff for $50 each, with minimum purchases of 10 at a time (an illegal deduction of $500 each time Plaintiff sought leads necessary for her work) along with an additional deduction of 20% commission from any sales made using company provided leads, and finally the 10% deduction from commissions for the "mentorship program."

40. Defendants failed to provide Plaintiff Schoenfeld and other similarly situated employees with proper wage notices and paystubs.

## CLASS AND COLLECTIVE ALLEGATIONS

41. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and a collective action under § 216(b) as to FLSA minimum wage and overtime claims.

42. This action is brought on behalf of Plaintiff and a putative Class consisting of each and every other person who worked for Defendants selling or marketing financial products in any capacity, including but not limited to those classified as loan officers, loan brokers, representatives, sales associates, trainees, sales trainees, or account managers within the State of New York, who were classified as independent contractors and/or compensated on a commission only basis.

43. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be in excess of hundreds of employees. In addition, the names of all potential members of the putative class are not known.

44. The questions of law and fact common to the putative class predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to:

a. Whether Defendants properly compensated Plaintiff and Class Members for all hours worked;

b. Whether Defendants properly compensated Plaintiffs and Class Members overtime compensation;

c. Whether Defendants misclassified Plaintiff and Class Members independent contractors;

d. Whether Defendant provided Plaintiff and the Class with proper commission payments;

e. Whether Defendant made Illegal Deductions from the wages of Plaintiff and the Class

f. Whether Defendants provided Plaintiffs and the Class with proper notice upon hiring, or yearly wage notice, or weekly wage statements; and

g. Whether Defendants provided Plaintiffs and the Class with paystubs.

45. The claims of the Named Plaintiff are typical of the claims of the putative class. The Named Plaintiff and putative class members were all subject to Defendant's policies and willful practices of failing to compensate workers in compliance with applicable law.

46. The Named Plaintiff and her counsel will fairly and adequately protect the interests of the putative class.

47. The Named Plaintiff has retained counsel experienced in complex wage and hour class action litigation.

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The individual Named Plaintiff and putative class members lack the financial resources to adequately prosecute separate lawsuits against Defendant.

49. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendant's policies.

**FIRST CAUSE OF ACTION**
**Violation of FLSA – Minimum Wage**

50. Plaintiff repeats and hereby incorporates each of the above allegations into this cause of action, including the facts described therein.

51. Plaintiff brings this claim individually and on behalf of others similarly situated.

52. Pursuant to 29 U.S.C. § 206, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than -- (A) $5.85 an hour, beginning on the 60th day after May 25, 2007; (B) $6.55 an hour, beginning 12 months after the 60th day; and (C) $7.25 an hour, beginning 24 months after that 60th day [July 24, 2009]."

53. Defendants were "employers" within the meaning of 29 U.S.C. § 203(d), in that Defendants acted directly or indirectly in the interest of Plaintiff and other similarly situated workers in relation to their employment.

54. Defendants are an "employer" within the definition under the 29 U.S.C. § 203(d).

55. Plaintiff and other similarly situated workers, during all relevant times, engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce.

56. 29 U.S.C. § 213 exempts certain categories of employees from minimum wage obligations.

57. None of these exemptions apply to Plaintiff or other similarly situated workers.

58. Plaintiff and other similarly situated workers were non-exempt employees and were entitled to receive minimum wages for all hours worked.

59. Defendants violated the FLSA by failing to pay Plaintiff and other similarly situated workers wages for all hours worked.

60. Plaintiff was not paid any wages or commissions during her employment with Defendants.

61. As a result, Plaintiff went months without compensation, including minimum wage payments for the hours they worked.

62. Defendants' policy was to compensate Plaintiff and other similarly situated workers primarily or solely through commissions, without ensuring that their compensation satisfied the minimum wage requirements of the FLSA for each hour worked.

63. Plaintiff and other similarly situated workers worked substantial hours, including workweeks in excess of forty hours, while receiving compensation that fell below the applicable minimum wage for all hours worked.

64. Defendants also failed to maintain accurate records reflecting the total hours worked and wages paid to Plaintiff and other similarly situated workers.

65. Upon information and belief, Defendants' failure to pay lawful minimum wages to Plaintiff and other similarly situated workers was willful within the meaning of the FLSA.

66. As a result of Defendants' unlawful conduct, Plaintiff other similarly situated workers have suffered damages, including unpaid minimum wages, liquidated damages, interest, attorneys' fees, and costs, in amounts to be determined at trial.

**SECOND CAUSE OF ACTION**
**Violation of FLSA – Overtime Compensation**

67. Plaintiff repeats and hereby incorporate each of the above allegations into this cause of action, including the facts described therein.

68. Plaintiff brings this claim individually and on behalf of others similarly situated.

69. Pursuant to 29 U.S.C § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

70. Defendants are an "employer" within the definition under the U.S.C. § 203(d).

71. Plaintiff and other similarly situated workers, during all relevant times, engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce.

72. 29 U.S.C. § 213 exempts certain categories of employees from minimum wage obligations. None of these exemptions apply to Plaintiff or other similarly situated employees.

73. Defendants violated the FLSA by failing to pay Plaintiff and other similarly situated workers overtime wages at a rate of one and one-half times the normal rate of pay for all hours worked over 40 in any given week.

74. Plaintiff regularly worked over 40 hours per week.

75. Specifically, Plaintiff Schoenfeld would typically work approximately 50 hours per week.

76. Defendants failed to pay any overtime compensation.

77. All commission-based workers like Plaintiff were wrongfully misclassified as exempt from overtime.

78. Upon information and belief, the failure of Defendants to pay Plaintiff and other similarly situated workers action their rightfully owed wages was willful.

79. By the foregoing reasons, Defendants are liable to Plaintiff and other similarly situated workers in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Violation of New York Labor Law – Failure to Pay Minimum Wage**

80. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

81. Plaintiff brings this claim individually and on behalf of others similarly situated.

82. The New York Labor Law, including Articles 6 and 19, as well as the implementing regulations, including the Miscellaneous Industries and Occupations Wage Order, require employers to pay employees minimum wage for all hours worked.

83. Defendants were "employers" within the meaning of NYLL § 651(6) and the implementing regulations promulgated thereunder.

84. Defendants jointly operated and controlled ROK and exercised authority over Plaintiff and similarly situated workers, including with respect to hiring, firing, supervision, scheduling, compensation, workplace policies, and the conditions of employment, and are therefore jointly and severally liable as employers.

85. Defendants exercised substantial control over Plaintiff's and similarly situated workers' employment, including controlling work schedules, directing the manner and means by which work was performed, establishing workplace policies, determining rates and methods of compensation, setting productivity expectations and deadlines, supervising day-to-day work activities, and otherwise maintaining control over the terms and conditions of employment.

86. Plaintiff was an "employee" within the meaning of NYLL § 651(5) and the implementing regulations promulgated thereunder.

87. Plaintiff, and upon information and belief, other similarly situated employees of Defendants, were not paid minimum wages for all hours worked on behalf of Defendants.

88. Defendants failed to compensate Plaintiff and similarly situated workers for all hours worked at the applicable hourly minimum wage rate.

89. Instead, Defendants maintained a policy of compensating Plaintiff and similarly situated workers primarily or solely through commissions, without ensuring that such compensation satisfied the minimum wage requirements of the NYLL for every hour worked.

90. Defendants improperly and unlawfully misclassified Plaintiff and other similarly situated workers as independent contractors in order to avoid compliance with New York wage-and-hour laws.

91. As a result of the foregoing, Defendants violated the NYLL and its implementing regulations and are liable to Plaintiff and similarly situated workers for unpaid wages, liquidated

damages, statutory penalties, pre-judgment and post-judgment interest, attorneys' fees, costs, and disbursements pursuant to NYLL § 198 and other applicable provisions of law.

**FOURTH CAUSE OF ACTION**
**Violation of New York Labor Law – Failure to Pay Overtime**

92. Plaintiff repeats and hereby incorporates each of the above allegations into this cause of action, including the facts described therein.

93. Plaintiff brings this claim individually and on behalf of others similarly situated.

94. 12 NYCRR § 142-2.2 and other implementing regulations governing Defendants' conduct requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate…."

95. Defendants are an "employer" within the definition under 12 NYCRR § 142-2.2 and the implementing regulations.

96. Plaintiff was an "employee" within the definition under the 12 NYCRR § 142-2.2 and the implementing regulations.

97. Plaintiff, and upon information and belief, and other similarly situated workers would regularly work over forty hours a week while performing work on behalf of Defendants.

98. Plaintiffs regularly worked over 40 hours per week.

99. Specifically, Plaintiff Schoenfeld would typically work approximately 50 hours per week.

100. Defendants did not pay overtime compensation at one and one-half times her regular hourly rate for all hours worked over 40 in a given week.

101. Defendants failed to pay any overtime compensation.

102. Plaintiff, and upon information and belief, other similarly situated workers, did not receive overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in any given week.

103. Defendants did not provide paychecks that accurately reflect the total amount of hours Plaintiff worked.

104. Plaintiff was not exempt from overtime pursuant to the Labor Law and the implementing regulations, as Defendants wrongfully classified them and other workers as independent contractors.

105. Consequently, by failing to pay Plaintiff, and other individuals similarly situated, all their overtime compensation, Defendants violated Labor Law § 663 and 12 NYCRR § 142-2.2.

106. Upon information and belief, Defendants' failure to pay overtime compensation was willful.

## FIFTH CAUSE OF ACTION
## Violation of New York Labor Law – Failure to Pay Commissions

107. Plaintiff repeats and hereby incorporates each of the above allegations into this cause of action, including the facts described therein.

108. Plaintiff brings this claim individually and on behalf of others similarly situated.

109. Pursuant to Article 6 of the Labor Law, workers such as Plaintiff are protected from wage underpayments and improper employment practices, including the failure to provide all earned commissions.

110. Labor Law § 190 et seq. and its implementing regulations, including the Wage Orders, protects workers when they fail to receive all unpaid commissions by underpayments by their employers.

111. According to Labor Law § 191 and the cases interpreting same, workers are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

112. Defendants withheld commissions from Plaintiff and other similarly situated workers. For example, Plaintiff worked for 5 months without receiving any commission payments at all.

113. Plaintiff and other similarly situated workers were Commission Salespersons under Article 6 of the Labor Law.

114. Under the Labor Law including Article 6 of the Labor Law, Plaintiff was owed the commissions at the time they were earned (i.e., at the time they found a ready, willing, and able buyer) but instead were withheld entirely to the benefit of Defendants.

115. Defendants' failure to pay Plaintiff and other similarly situated workers is a violation of Labor Law §§ 191, 191-b, 191-c, 193, 195, and 198.

116. By withholding commissions from Plaintiff and other similarly situated workers, pursuant to Labor Law § 193 and the cases interpreting same, Defendants unlawfully withheld wages.

117. Due to Defendants' violation of the Labor Law, Plaintiff and other similarly situated workers are entitled to recover from Defendants: an award of damages for their unpaid compensation, liquidated damages, interest, reasonable attorneys' fees and costs, and disbursements of the action, pursuant to the Labor Law § 198.

**<u>SIXTH CAUSE OF ACTION</u>**
**Violation of the New York Labor Law – Illegal Deductions**

118. Plaintiff repeats and hereby alleges each of the above allegations into this cause of action, including the facts described therein.

119. Plaintiff brings this claim individually and on behalf of others similarly situated.

120. New York Labor Law § 193 and other implementing regulations governing Defendants' conduct, states that "No employer shall make any deduction from the wages of an employee, except deductions which: (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency including regulations promulgated under paragraph c and paragraph d of this subdivision; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made. Whenever there is a substantial change in the terms or conditions of the payment, including but not limited to, any change in the amount of the deduction, or a substantial change in the benefits of the deduction or the details in the manner in which deductions shall be made, the employer shall, as soon as practicable, but in each case before any increased deduction is made on the employee's behalf, notify the employee prior to the implementation of the change."

121. In violation of Labor Law § 193, Defendants illegally deducted money from Plaintiff and similarly situated workers by making them pay for ordinary employment costs of phones and other monies that should have been paid by Defendants as employers.

122. Specifically, Plaintiff, and upon information and belief, similarly situated employees, were charged a $50 monthly fee for access to Defendant's 8x8 Business Call Platform, through which they performed the majority of their work.

123. Defendants also charged a $50 fee for leads provided to Plaintiff and, upon information and belief, other similarly situated employees. Leads were sold at a minimum amount

of 10 per purchase, effectively making it a $500 deduction each time Plaintiff sought leads necessary to conduct their work.

124. Defendants maintained a commissions structure which entailed further illegal deductions. Defendants forced Plaintiff, and upon information and belief, other similarly situated employees, to enter a mandatory "mentorship program," in which 10% was deducted from New Business Funding commission payments. The services offered in this program amount to the necessary assistance and oversight characteristic of an employer-employee relationship. They included assistance with utilizing Defendant's sales program, guidance on company policy, and other forms of oversight by Defendants. These are ordinary business expenses which Defendants should have borne rather than passing them on to employees.

125. Defendants also deducted 20% from commissions earned on sales made using company-provided leads or data. Such leads and data were essential materials for Plaintiff and other similarly situated employees effectively performing the job functions, which Defendants directed them to carry out. The costs of these materials constituted ordinary business expenses which should have been borne by Defendants rather than passed on to employees.

126. By forcing Plaintiff to bear the cost of these expenses without reimbursement, Defendants shifted the operational costs to Plaintiff and, upon information and belief, other similarly situated workers, thereby reducing their earned wages.

127. Thus, Defendants' conduct continues a violation of the Labor Law § 193, as the expenses were not authorized by law, expressly authorized in writing by Plaintiff, or for Plaintiff's benefit.

128. For the foregoing reasons, Defendants have violated New York Labor Law § 193 and are liable to Plaintiff and members of the putative class for all damages permissible under the

New York Labor Law in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

**SEVENTH CAUSE OF ACTION**
**Violation of New York Labor Law – Failure to Provide Wage Statements**

129. Plaintiff repeats and hereby incorporates each of the above allegations into this cause of action, including the facts described therein.

130. Plaintiff brings this claim individually and on behalf of others similarly situated.

131. The Wage Theft Notice Act was passed in the early 2010s to protect employees from wage theft and ensure that adequate records would be kept concerning how employees were paid. Specifically, Labor Law §§ 195 and 198 provides obligations and monetary remedy in instances where the employer fails to provide its employees at the time of hire, and upon change, a written wage notice setting forth the rate of pay and other wage requirements. Further, Labor Law § 195(3) and § 198 provides protection and remedies for employees who do not receive pay stubs with the appropriate information.

132. As stated in Labor Law § 195(1), every employer shall: "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances."

133. In violation of Labor Law § 195(1), Defendants failed to provide Plaintiff with a written wage notice upon the initiation of their employment.

134. Labor Law § 195(3) requires an employer such as Defendants to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work

covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked…"

135. According to Labor Law § 198-1 including under subsections 1-b and 1-d, Plaintiff is entitled to $50.00 for every violation Defendants committed by failing to provide a compliant paycheck or Wage Theft Notice at the time of hiring, or at any point during their employment.

136. Plaintiff did not receive accurate weekly paystubs or any notice from Defendants on her wages, including any statement that accurately reflected the hours he worked or the number of deductions that were being taken from her wages.

137. Additionally, Plaintiff and similarly situated workers did not receive commission breakdowns and records that would provide the appropriate calculations and breakdowns on those commissions as wage compensation.

138. For the foregoing reasons, Defendants have violated Labor Law § 195 and § 198 and are liable to Plaintiff and other similarly situated workers in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, pray for relief as follows:

(a) For an order certifying the Class and Collective under Federal Rule of Civil Procedure 23(b)(3) and § 216(b) of the FLSA, including by naming Plaintiff as representative of the Class and Collective and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff, the Class, and Collective on all counts asserted herein;

(c) For actual, compensatory, and putative damages in an amount to be determined by the trier of fact;

(d) For an order of restitution and all other forms of equitable monetary relief;

(e) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f) Awarding pre- and post-judgment interest on any amounts awarded; and,

(g) Awarding such other and further relief as may be just and proper including declaratory and injunctive relief.

Dated: Mineola, New York
October 29, 2026

**LEEDS BROWN LAW, P.C.**

Brett R. Cohen
Michael A. Tompkins
134 Mineola Boulevard – 2nd Floor
Mineola, New York 11501
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

*Attorneys for the Named Plaintiff & Putative Class and Collective*